# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

PETER J. MCDANIELS,

               Appellant,

        v.

DEPARTMENT OF CORRECTIONS,

               Respondent.

DIVISION ONE

No. 81828-7-I

UNPUBLISHED OPINION

DWYER, J. — Peter McDaniels appeals from an order dismissing his action under the Public Records Act (PRA), chapter 42.56 RCW, against the Department of Corrections (DOC). McDaniels contends that the superior court erred by finding no violation of the PRA because a record maintained by the Department of Enterprise Services (DES) was responsive to his requests. Because DOC did not withhold responsive records, we affirm.

I

Correctional Industries is a division of DOC. DOC uses a standardized meal menu, developed by Correctional Industries, in all DOC facilities. The standardized menu dictates what foods are served to inmates in DOC facilities. Correctional Industries also operates several food factories which produce many of the items on the standardized menu. DOC facilities are expected to purchase food products from Correctional Industries when it can supply what is necessary to comply with the menu.

There is no contract between DOC and Correctional Industries because Correctional Industries is a division of DOC. When food items are needed that Correctional Industries cannot provide, DOC facilities purchase those items from vendors that have entered into a master contract administered by DES. This is known as the "umbrella food contract" or DES contract No. 06006. DOC employees are only authorized to purchase products that have been identified to meet the standardized menu. Correctional Industries has never sold products to DOC institutions under DES contract No. 06006.

McDaniels is an inmate at a DOC facility, Stafford Creek Corrections Center. In 2013, McDaniels filed a grievance complaining that, several days in a row, the meat he had been given was rotten. He was told in response that "[Stafford Creek Corrections Center] is under contract with [Correctional Industries] Food Factory and we do not have the ability to change or revoke a contract at [this] level."

On March 10, 2017, McDaniels made the following public records request to DOC's public disclosure unit:

> I am requesting copies of the following public records: Often, when I file complaints or interview DOC & [Stafford Creek Corrections Center] staff members in reference to the menus and the foods that are actually being served to inmates at [Stafford Creek Corrections Center] from the Kitchen/Dining Hall, the DOC/[Stafford Creek Corrections Center] staff member will claim that they are following the menu and the "contract" says we are not allowed to alter the menu. My public disclosure request is for any and all contracts and other agreements and other documentation that dictates what the [Stafford Creek Corrections Center] Kitchen must serve to inmates for their three daily meals (including holidays and brunches) and what the [Stafford Creek Corrections Center] Kitchen can and cannot serve when altering, adding to, and subtracting from all of the numerous menu/diets offered in policy (i.e. dictating all written

2

menus). I am only looking for Contracts, agreements, and documentation. I am not requesting policies that I have access to already in the law library; and I am not looking for the menus unless they are specifically mentioned in the contract, agreement, and documentation as attachments thereto. Please do not alter the above request in your response. The above is exactly what I am looking for.

Public records specialist Donna Williams acknowledged receipt of the request and assigned it tracking number PRU-46351. Williams determined that if responsive documents existed, they would be either at Stafford Creek Corrections Center, in DOC Correctional Industries, DOC Health Services, DOC Policy Unit, or in DOC's Contracts Unit. Williams contacted these departments. None of the records Williams received from these departments responded to McDaniels' request. On May 18, 2017, Williams advised McDaniels that DOC had no records responsive to his request and closed the request.

Several months later, McDaniels had the following exchange through kiosk messages with the Stafford Creek Corrections Center's superintendent's office:

> [McDaniels:] SUPR. GILBERT, YOU HAVE A RIGHT AND A DUTY TO PETITION YOUR GOVERNMENT TO HAVE [CORRECTIONAL INDUSTRIES] FOOD SERVICES REMOVED FROM THIS FACILITY. FOR MORE THAN DOUBLE THE PRICE, WE ARE RECEIVING POORER QUALITY FOOD. RCW 39 OUTLINES THE MEANS FOR YOU TO START YOUR RESEARCH.
>
> [Superintendent's Office:] This is a contract set up through Headquarters. – MJ Supt office
>
> [McDaniels:] THANK YOU FOR YOUR 8-22-17 RESPONSE ABOUT THE FOOD CONTRACT SET UP BY DOC HQ. PLEASE PROVIDE ME WITH THE CONTRACT #, THE CONTACT MANAGER-S NAME AND MAILING INFORMATION FOR HIM/HER. THANK YOU. MCDANIELS, PETER J.

3

[Superintendent's Office:] I am unsure of this, you would need to contact Headquarters for this information. M Johnson supt office

McDaniels made a second public records disclosure request on

September 1, 2017:

Hello, I was sent a kiosk message from the mailbox "Superintendent-S01" on 8/22/2017 that reads, "This is a contract set up through Headquarters.—MJ Supt office"
Please provide me with the entire contract that the superintendent's office is referring to.  Thank you.

The request was assigned to records specialist Kailey Tschimperle and assigned number PRU-49186.  Tschimperle found four food services contracts and provided them to McDaniels for $12.53.  McDaniels responded that these were not the contracts he was looking for (because they were not related to food service inside Stafford Creek Corrections Center) and asked for a refund.

Public disclosure specialist Dallas Wortham took over the request, provided a refund and sent McDaniels a letter informing him that DOC would now be interpreting his request to be "a copy of the contract between the Department of Corrections and Correctional Industries to provide food services at Stafford Creek Corrections Center."  McDaniels responded that this interpretation was not correct and that his request was for the contract the kiosk messages referred to. McDaniels also advised Wortham that a Correctional Industries employee had mentioned an "umbrella food contract," which might be responsive to his request. Wortham contacted the Contracts and Legal Affairs Units of both DOC and Correctional Industries and was informed that neither had responsive documents. On March 20, 2018, Wortham informed McDaniels that an additional search had

4

yielded no responsive documents, that DES might have the contract he was seeking and that the request was closed.

McDaniels responded that he had seen part of DES "umbrella food contract" No. 06006 because it had been provided to another prisoner and that he believed it was responsive to his request. He made several additional requests for intragovernmental communications regarding his prior requests. Wortham treated this correspondence as a new request, PRU-52132. PRU-52132 remained open until September 11, 2018.

McDaniels filed an amended complaint on July 11, 2018, alleging that DOC had not complied with the PRA because it failed to provide him with DES Contract No. 06006. A hearing was set to determine whether the DOC violated the PRA by withholding responsive documents to McDaniels' requests.

The superior court found that McDaniels only presented evidence with regard to PRU-46351 and PRU-49186, that those requests were vague and ambiguous, that DOC attempted in good faith to properly interpret and respond to these requests, and that McDaniels failed to present any evidence demonstrating that DOC silently withheld any records that were responsive to these requests. The superior court concluded that DOC did not violate the PRA and dismissed the action.

McDaniels appeals.

II

McDaniels contends that DOC failed to disclose DES contract No. 06006 in response to his requests, in violation of the PRA. To make this claim, he

5

asserts that: (1) DES contract No. 06006 was responsive to his requests, and (2) that DOC was required to provide him with a contract administered by DES because DOC "uses" the contract. We disagree.

We review the superior court's PRA decision de novo when the record consists only of documentary evidence. Janes Does 1-15 v. King County, 192 Wn. App. 10, 20, 366 P.3d 936 (2015) (citing Nissen v. Pierce County, 183 Wn.2d 863, 872, 357 P.3d 45 (2015)); Ockerman v. King County Dep't of Developmental & Envtl. Servs., 102 Wn. App. 212, 216, 6 P.3d 1214 (2000).[1]

The PRA "is a strongly worded mandate for broad disclosure of public records." Progressive Animal Welfare Soc'y v. Univ. of Wash., 114 Wn.2d 677, 682, 790 P.2d 604 (1990). "Agencies are required to disclose any public record on request unless it falls within a specific, enumerated exemption." Neigh. All. of Spokane County v. Spokane County, 172 Wn.2d 702, 715, 261 P.3d 119 (2011). However, the PRA does not require agencies to create or produce a record that does not exist. Fisher Broad.-Seattle TV LLC v. City of Seattle, 180 Wn.2d 515, 522, 326 P.3d 688 (2014).

Additionally, although the exact name of the record is not required, requests must be for identifiable records or classes of records. Fisher Broad.-Seattle, 180 Wn.2d at 522.

---

[1]It has not been satisfactorily explained why the superior court's factual findings are not accorded deference as they would be under other circumstances in which the superior court has made factual findings based on documentary evidence. See, e.g., Dolan v. King County, 172 Wn.2d 299, 310, 258 P.3d 20 (2011). Nevertheless, we follow the applicable case law in this regard. However, after engaging in de novo review, we reach conclusions identical to those of the superior court.

McDaniels' first request, PRU-46351, was for "any and all contracts and other agreements and other documentation that dictates what the [Stafford Creek Corrections Center] Kitchen must serve to inmates," and his request specifically excluded policies and menus. As no contract or agreement dictates what the kitchen at Stafford Creek Corrections Center must serve, this was a request for a record that does not exist. Williams conducted an appropriate search and concluded that DOC did not have any responsive records. Despite McDaniels' contention to the contrary, the evidence in the record suggests that DES contract No. 06006 does not control what the kitchen at Stafford Creek Corrections Center must serve to inmates and was, therefore, not responsive to this request.

McDaniels' second request, PRU-49186, was for the contract mentioned in a kiosk message from the Stafford Creek Corrections Center's superintendent's office. Once again, this request was for a record that does not exist—the superintendent's response to the kiosk message erroneously suggested that a contract controls Correctional Industries' relationship to the Stafford Creek Corrections Center's kitchen. The superintendent's office was mistaken; there is no such contract. The DOC records specialists nonetheless again made reasonable efforts to properly interpret and respond to the request, clarifying the request and conducting multiple searches before suggesting that DES might have the record McDaniels sought.[2]

---

[2] Even if McDaniels had clearly requested DES contract No. 06006, DOC would not be required to provide him with a record maintained by a different agency. McDaniels' reliance on Cedar Grove Composting, Inc. v. City of Marysville, 188 Wn. App 695, 354 P.3d 249 (2015), is misplaced. Cedar Grove addresses a public record held by a private party, not a different agency that is also subject to public records act requirements. The evidence in the record does not suggest that DES contract No. 06006 was in DOC's records. The PRA does not require "'an

McDaniels' third request, PRU-52132, is not properly before this court. McDaniels did not submit evidence regarding PRU-52132 in the superior court and there is no evidence in the record concerning DOC's treatment of PRU-52132. We will not review a claim of error that was not raised in the superior court. RAP 2.5(a); Mitchell v. Dep't of Corr.,164 Wn. App. 597, 601 n.4, 277 P.3d 670 (2011). Furthermore, PRU-51232 was open at the time this action was filed. McDaniels was not entitled to initiate a lawsuit with regards to PRU-52132 until after DOC had engaged in some final action. See Hobbs v. State Auditor's Office, 183 Wn. App. 925, 935-36, 335 P.3d 1004 (2014).

Because the records McDaniels requested do not exist, DOC did not violate the PRA by failing to produce them. Thus, McDaniels' claim fails.

Affirmed.

Dwyer, J.

WE CONCUR:

Verellen, J.    Leach, J.

---

agency to go outside its own records and resources to try to identify or locate the record requested.'" Koenig v. Pierce County, 151 Wn. App. 221, 232-33, 211 P.3d 423 (2009) (quoting Limstrom v. Ladenburg, 136 Wn.2d 595, 604 n.3, 963 P.2d 869 (1998)).